December 14, 1979

### 79-86 MEMORANDUM OPINION FOR THE GENERAL COUNSEL, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, DEPARTMENT OF COMMERCE

**Fishery Conservation and Management Act (16 U.S.C. § 1801 *et seq.*)—Boundaries between Adjoining Regional Fishery Management Councils**

This responds to your request for our opinion whether the Secretary of Commerce is required by the Fishery Conservation and Management Act of 1976 (Act), 90 Stat. 331, 16 U.S.C.A. § 1801 *et seq.* (1979 Supp.) to establish boundaries between adjoining regional fishery management councils on a geographical basis rather than on the basis of considerations other than geography.[1]

There are eight regional fishery councils, each covering certain designated States and having jurisdiction over fisheries in areas seaward of those States. The question of boundaries is most controversial—and has arisen in this case—in the context of those adjoining fishery councils that include the same State, in this instance Florida. In such a situation, one cannot begin with an established State boundary and derive a "seaward" line from it. Theoretically, the Secretary could establish a boundary between two adjoining councils at any point along the Florida coastline, even though it does not rest only on a geographical standard, as long as it does conform to a rational division between fisheries in areas seaward of the shore. The question you have asked is essentially whether such discretion has been delegated, or whether it is barred, by the Act.

For the reasons discussed below, we conclude that discretion is barred. The Act contemplates that boundaries between adjoining regional fishery management councils are to be established solely on the basis of geographical factors.

---

[1] The second question raised by you concerning the litigation authority of regional fishery councils will be addressed in a separate, forthcoming memorandum.

All references in this memorandum to title 16 of the United States Code Annotated are to the 1979 Supplement.

## I. Background

The issue presented derives from a long-standing controversy between the South Atlantic Fishery Management Council (SAFMC) and the Gulf of Mexico Fishery Management Council (GMFMC). The SAFMC consists of the States of North Carolina, South Carolina, Georgia, and Florida, and it "shall have authority over the fisheries in the Atlantic Ocean seaward of such States." § 302(a)(3) of the Act, 16 U.S.C.A. § 1852(a)(3). The GMFMC consists of the States of Texas, Louisiana, Mississippi, Alabama, and Florida, and it "shall have authority over the fisheries in the Gulf of Mexico seaward of such States." § 302(a)(5) of the Act, 16 U.S.C.A. § 1852(a)(5).

In 1977, the National Oceanic and Atmospheric Administration (NOAA) published interim regulations, see 42 F.R. 36980, proposing that the boundary between the two Councils be located at the point of intersection of Dade County and Monroe County in Florida, and seaward of that point. That boundary was not based on geographical factors.[2] It is located, we are told, some 200 miles north of the southernmost part of the Florida Keys. Accordingly, it would give the GMFMC jurisdiction over the water areas seaward of the Florida Keys, and would confine the jurisdiction of the SAFMC to an area north of a line running seaward of the Dade County-Monroe County border. The SAFMC has objected to this boundary on the ground that it gives the GMFMC jurisdiction over part of the Atlantic Ocean.

For an extended period of time, negotiations were carried on between the councils, and between them and the regional and national authorities of NOAA. Memoranda of law were submitted by both sides to NOAA. In a decision published on April 20, 1979, NOAA reaffirmed the earlier boundary ruling. See 44 F.R. 23528-29.

The legal reasoning underlying NOAA's determination rests significantly on § 304(f)(2) of the Act, 16 U.S.C.A. § 1854(f)(2). It identifies as one of the Secretary's miscellaneous duties that he "shall establish the boundaries between the geographical areas of authority of adjacent Councils." Although NOAA notes that this grant of authority was added to the original bill without explanation, it maintains that, on its face, the statute delegates to the Secretary a broad discretion to establish boundaries between adjacent councils. Moreover, it urges that if § 302(a) of the Act (which stipulates that the SAFMC and the GMFMC shall have authority over fisheries in the Atlantic Ocean and the Gulf of Mexico, respectively) is read to limit the Secretary's discretion to the identification of a geographical line between the Atlantic and the Gulf, then, in effect,

---

[2]In the interim regulations, 50 CFR § 601.12(c)(2) (1978), the explanation is as follows:
The boundary between the South Atlantic and Gulf of Mexico Councils continues the agreed county boundary between Dade and Monroe Counties to minimize potential difficulties for fishermen, the affected councils, and outward bordering countries.

§ 302(a) would contradict § 304(f)(2)'s grant of broad discretion to the Secretary. To avoid such inconsistency, NOAA argues, it is necessary to read § 302(a) in an expansive manner[3] so as to permit the establishment of boundaries on the basis of several factors including, but not confined to, geographical considerations.

Apart from statutory language, NOAA believes that a broad reading is necessitated by the underlying purpose of § 304(f)(2) to promote the conservation and management of fisheries. Because fish do not respect geographical boundaries established by cartographers and geographers, NOAA reasons, it would not be consistent with the statute's aim to insist that boundaries between adjoining councils must have only a geographical foundation.[4] Furthermore, NOAA argues that a strictly geographical reading of the statutory provision dealing with the council's boundaries is inconsistent with the intent of Congress indicated in passages in the legislative history dealing with the membership of certain western States on regional councils. In particular, NOAA relies on indications in the legislative history that certain States were included on more than one council because, apart from purely geographical considerations, their residents have interests in the management of the area's fisheries.

## II. Discussion

We start our analysis with the statutory language. The Act announces that the SAFMC "shall have authority over the fisheries in the Atlantic Ocean seaward" of its constituent States, including Florida, and that the GMFMC "shall have authority over the fisheries in the Gulf of Mexico seaward" of its constituent States, also including Florida. §§ 302(a)(3), (5), 16 U.S.C.A. § 1852(a)(3), (5).

These provisions distinguish the areas of jurisdiction of the SAFMC and GMFMC with reference to two different water areas—the Atlantic Ocean and the Gulf of Mexico. This is clarified by comparing the SAFMC's jurisdiction, which has authority over "the fisheries in the Atlantic Ocean seaward" of its States, with that of the Mid-Atlantic Fishery Management Council, which has authority over "the fisheries in the Atlantic Ocean seaward of such States." The characteristic distinguishing the jurisdictions of the SAFMC and the Mid-Atlantic Fishery Management Council is the fact that their members are representatives of different States; both have jurisdiction over different parts of the same ocean. In contrast, the distinguishing characteristic between the jurisdiction of the SAFMC and that of

---

[3]In a supporting memorandum of law, NOAA describes its broad reading of § 302(a) as a "functional" approach, as opposed to what it calls the SAFMC's "literal" interpretation.

[4]This argument is said to be strengthened by the Act's definition of a fishery; it speaks of stocks of fish identified "on the basis of geographical, scientific, technical, recreational, and economic characteristics * * * ." 16 U.S.C.A. § 1802(7)(A). Because the definition is not confined to geographical factors, it is said to buttress the view that the Act's drafters were not attempting to limit the Secretary's discretion in establishing boundaries between adjoining councils to the consideration of geographical matters.

the GMFMC is that the former has authority over fisheries in the Atlantic Ocean, as distinct from the Gulf of Mexico. This suggests that Congress intended that the boundary identification between the latter two councils should ultimately rest on this geographical criterion.

That interpretation is strengthened by § 302(a)'s last sentence. It provides that "[e]ach Council shall reflect the expertise and interest of the several constituent States *in the ocean area* over which such Council is granted authority." [Emphasis added.] This pronouncement reaffirms the straightforward reading of the statute to the effect that Congress intended the councils' jurisdictions to be defined geographically in terms of ocean areas, not in terms of nongeographical factors. We next will discuss whether this reading is consistent with (1) other provisions of the Act, (2) its underlying purposes, and (3) its legislative history.

## A.  Consistency with Other Provisions of the Act

We find no inconsistency between, on the one hand, saying that § 302(a) limits the Secretary's authority in establishing boundaries by positing certain geographical criteria as guideposts and, on the other hand, saying that § 304(f)(2) grants the Secretary authority to establish the boundaries. One provision simply limits the authority granted by the other provision. Pursuant to § 304(f)(2), the Secretary would still have a significant function to perform, namely, identifying with precision the boundaries between adjoining councils.

This interpretation is borne out by § 304(f)(2), which does not purport to grant the Secretary unlimited discretion in establishing boundaries, but rather provides that the Secretary "* * * shall establish the boundaries between *the geographical areas of authority* of adjacent Councils." [Emphasis added.] The use of the modifier "geographical" reaffirms the view that geographical considerations define the council's areas of authority.'

Moreover, the contrary view appears to be inconsistent with other provisions of the Act. As we have noted, the major feature distinguishing the areas of authority of two councils such as, for example, the Mid-Atlantic and the South Atlantic Councils, is geographical—namely, the boundary between different States on each council. Absent an affirmative basis for doing so, which does not appear in the statute, it would be anomalous to distinguish the areas of authority of some councils, but not of others, on geographical grounds.

---

'It may be suggested that the use of the word "geographical" in the phrase "geographical areas of authority" does not mean that the areas of authority are to be based on geographical considerations but rather, once established, that they have a geographical dimension. No other dimension is identified in the cited statutory language. In conjunction with the language of § 302(a) and the legislative history, this indicates that Congress intended to ground the councils' areas of authority on geographical factors alone.

## B.   Consistency with the Act's Purposes

The vindication of the Act's aim—the conservation and management of fishery resources off the coasts of the United States, *see* 16 U.S.C. §§ 1801(b)(1)–(6)—would not be undermined by a decision that the Secretary is bound to establish boundaries between adjoining councils on a geographical basis. We believe that the statute provides sufficient flexibility for particularized treatment of fisheries that overlap the boundaries of adjoining councils.

When a fishery extends on both sides of a boundary, the Secretary is empowered to direct either one of the adjoining councils to prepare the management plan for the fishery. Alternatively, the councils could be directed to prepare jointly a plan to be approved by a majority of each council. *See* § 304(f)(1), 16 U.S.C.A. § 1854(f)(1). The fact that a geographically defined boundary divides two adjoining councils would not prevent effective management of a fishery the location of which does not conform to the boundary.[6]

## C.   Consistency with the Legislative History

The scant legislative history on the issue confirms the interpretation we have sketched. The forerunner of the crucial language of what became § 302(a) first appeared in the bill reported by the Senate Committee on Commerce,[7] which stated in its report that national standards for fishery management and conservation:

> * * * are to be applied by * * * newly-created Regional Fishery Management Councils (*one for each major ocean area*) in the development of management plans for each fishery determined to be in need of management and conservation * * * .[8]
> [Emphasis added.]

The language in italics reaffirms that regional councils are to be distinguished geographically on the basis of different ocean areas, not on the basis of nongeographical factors.

Nor is this view weakened by passages in the legislative history indicating that certain western States should be represented on more than one council because, apart from solely geographical factors, their residents have an

---

[6]We do not consider the Act's definition of a ''fishery'' to support the view that boundaries between adjoining councils should be defined in terms of all the factors that define a fishery. A fishery and an area of authority of fishery councils are analytically distinct. The former may be quite broadly defined while the latter may be more precisely defined. The key statutory provisions of concern here relate to the councils' areas of authority, not the definition of a fishery.

[7]S. Rept. 416, 94th Cong., 1st sess. 52 (1975).

[8]*Id.* at 3.

468

interest in the management of the area's fisheries.[9] Such passages show only that Congress relied on more than strictly geographical justifications for including representatives of a single State on more than one council. Once a council's membership is settled, the boundaries between adjoining councils are to be based on geographical grounds. Council membership and its boundary are simply two different subjects.

We are constrained to conclude that the Act requires boundaries between adjoining regional fishery management councils to be based on geographical factors alone.[10]

LEON ULMAN

*Deputy Assistant Attorney General*

*Office of Legal Counsel*

---

[9]For example, the report of the House Committee on Merchant Marine and Fisheries noted that California and Oregon were to be represented on both the Pacific and Alaska Councils (as they were called in the House bill) "because of the migratory habits and movements of anadromous species, many of which spawn in their waters and migrate to areas off the coast of Alaska, and because of the participation of their fishermen in this fishery off the coasts of Alaska * * * ." H. Rept. 445, 94th Cong., 1st sess. 62 (1975). Similarly, the Senate Commerce Committee report called for the inclusion of Washington on both the Pacific and North Pacific Councils (as the Senate bill termed them):

> The Pacific Council would be concerned with the fisheries in the Pacific Ocean, seaward of California, Oregon, and Washington * * * . The North Pacific Fishery Council would be concerned with the fisheries in the northern Pacific Ocean off the State of Alaska. For the most part, fishermen in this area reside in Alaska, however, a fairly large number of residents from the State of Washington also fish in this area. [S. Rept. 416, 94th Cong., 1st sess. 32 (1975).]

[10]We do not address the question where, in particular, the geographical line between the Atlantic Ocean and the Gulf of Mexico should be located in the absence of the views of your agency.

469
